IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| B&H CONSTRUCTION, INC. | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| V. | * | |
| | * | |
| JACKIE A. BURKE | * | |
| | * | |
| Defendant | * | |
| | * | |
| JACKIE A. BURKE | * | NO: 4:11CV00075 SWW |
| | * | |
| Counter Claimant | * | |
| | * | |
| V. | * | |
| | * | |
| B&H CONSTRUCTION, INC. | * | |
| | * | |
| Counter Defendant | * | |
| | * | |
| | * | |
| | * | |
| | * | |

**ORDER**

Plaintiff B&H Construction, Inc. ("B&H") filed this breach of contract action against Jackie A. Burke ("Burke") in state court. Burke counterclaimed and removed the case to this Court, asserting federal jurisdiction on the basis of diversity of citizenship between the parties and an amount in controversy exceeding $75,000. Now before the Court is Burke's motion for partial summary judgment (docket entries #20, #21, #22), B&H's response in opposition (docket entries #29, #30, #31), and Burke's reply (docket entry #32). After careful consideration, and for reasons that follow, Burke's motion for partial summary judgment will be granted and the case

1

will proceed on solely on the issue of damages.

## I.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

## II.

The following facts are undisputed.   B&H provides right-of-way clearing services, primarily for gas pipeline companies.  Burke and his former brother-in-law, nonparty Scott Henry ("Henry"), formed B&H on November 25, 2008, and each owned 50% of the corporation. After a few months, B&H needed additional capital in order to secure financing, and non-party Alan Lamb ("Lamb") purchased shares of the corporation.  According to Lamb's deposition

testimony, in February 2009, he signed a shareholder agreement with Henry and Burke, and shares of the corporation increased from 100 to 1,428. *See* docket entry #20, Ex. #2 (Lamb Dep.) at 23. Lamb testified that he received 689 shares, and Henry, who already owned 50 shares, received an additional 638. *See* Lamb Dep. at 23-24.

Burke retained his original 50 shares of B&H, but he received no additional shares. According to Lamb, Burke made no monetary investment in B&H, and it was agreed that he would become a one-third owner through "sweat equity." Lamb Dep. at 24. On February 9, 2009, Burke and B&H entered an employment agreement ("the Agreement"), which contains a covenant-not-to-compete clause. *See* docket entry #20, Ex. #1. The clause provides that for a period of one year after termination of Burke's employment, he will not (1) solicit or do business with B&H customers; (2) engage in business for B&H's active prospects; (3) induce any person employed by B&H to leave his employment; or (4) divulge B&H's confidential client information or trade secrets. *Id*. The Agreement also provides that Burke will receive B&H stock certificates as follows: 213 shares on January 1, 2010; 213 shares on January 1, 2011; and 213 shares on January 1, 2012.

After signing the Agreement, Burke worked as a field manager and retained the title of president, and Lamb handled the financial aspects of the business. Burke did not receive 213 shares of stock on January 1, 2010, and on September 1, 2010, he submitted notice of his resignation.

On January 6, 2011, B&H filed this action against Burke in state court, alleging that he breached the aforementioned covenant not to compete. According to the complaint allegations, during the year afer his resignation, Burke used B&H's confidential information and trade

3

secrets, "took" at least one of B&H's customers, and induced B&H employees to work for him. Burke counterclaimed, charging that B&H breached the Agreement by failing to pay him compensation for the thirty-day period following his notice of resignation and failing to issue him 213 shares of B&H stock on January 1, 2010.[1]

### III.

Burke moves for summary judgment on the complaint against him, asserting that the non-compete clause is unenforceable and that B&H has no proof of breach or damages. Burke also seeks partial summary judgment on his counterclaim.

<u>Choice of Law</u>

The Agreement provides that it shall be governed by and construed and enforced in accordance with Tennessee law, and the parties cite Tennessee law in support of their arguments. In a diversity suit, the effect of the choice-of-law provision is governed by the forum state's choice-of-law principles. *See Schwan's Sales Enters., Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 597-98 (8th Cir.2007). Arkansas will honor a choice-of-law clause "'provided that the law selected is reasonably related to the transaction and does not violate a fundamental public policy of the state.'" *Guardian Fiberglass, Inc. v. Whit Davis Lumber Co.*, 509 F.3d 512, 515 (8th Cir.2007). Here, B&H is a Tennessee corporation with headquarters in Murfreesboro, and the Court finds no evidence that the application of Tennessee law would violate fundamental public policy of Arkansas. Accordingly, the Court finds that Tennessee law governs the parties' claims.

<u>Enforceability of Non-Compete Clause</u>

---

[1] Burke's original pleading also included claims for slander and punitive damages, but he voluntarily dismissed those claims.

Burke argues that the non-compete provision of the Agreement is unenforceable on two grounds. First, he asserts that the clause is unenforceable for "lack of consideration" because he never received shares of B&H stock as provided in the Agreement.

Burke does not argue that the Agreement lacks mutuality of obligation, which is essential to the formation of a contract. While B&H's failure to perform may support a breach of contract claim or an argument that Burke's performance was excused, it does not support an argument that the Agreement was invalid from its inception and unenforceable for lack of consideration.

Second, Burke argues that the Agreement is unenforceable because B&H lacks a legitimate, protectable business interest. In general, covenants not to compete are disfavored in Tennessee. *See Hasty v. Rent–A–Driver, Inc.*, 671 S.W.2d 471, 472 (Tenn. 1984). However, if such an agreement protects a legitimate business interest and the time and territorial limitations are reasonable, a non-compete agreement will be enforced. *Id*. at 473. In order to find a protectable, legitimate business interest, "there must be special facts present over and above ordinary competition. These special facts must be such that without the covenant not to compete the employee would gain an unfair advantage in future competition with the employer." *Hasty*, 671 S.W.2d at 473. Considerations in determining whether an employee would have such an unfair advantage include whether the employee is given access to trade or business secrets or other confidential information and whether the employer's customers tend to associate the employer's business with the employee. *Id*.

B&H asserts that as a field manager for B&H, Burke associated closely with B&H customers. B&H cites Lamb's deposition testimony in an effort to demonstrate that Burke was "the face of the company," but the testimony cited provides no information about Burke's

dealings with customers, and it does not support a finding that customers perceived Burke as the face of B&H. *See* Lamb Dep. at 25, 26. Furthermore, Lamb's testimony indicates Burke and Henry both worked as field managers and had similar interactions with customers.

B&H also claims that Burke had customer lists and "pricing to customers and accounting information." Docket entry #30, at 5. Burke argues, and the Court agrees, that B&H has failed to produce any evidence that Burke's employment with B&H allowed him to gain trade secrets or confidential information. Furthermore, Lamb's deposition testimony indicates that Burke was not privy to confidential information. *See* Lamb dep. at 113-116(pricing information), 118-199, 125(customer information).

In sum, the Court finds no genuine issues for trial as to whether the non-compete clause at issue protects a legitimate business interest over and above ordinary competition. Accordingly, the Court finds that Burke is entitled to summary judgment on B&H's breach of contract claim.

Breach

In addition to arguing that the non-compete clause is unenforceable, Burke asserts that B&H has no evidence that he breached the Agreement. Burke notes that Lamb, who now serves as president of B&H, has testified that he has no personal knowledge that Burke solicited B&H customers, induced certain individuals to leave their employment at B&H, or used or disclosed B&H's confidential information. *See* Lamb Dep. at 255-156, 161-162, 112-113, 132.

B&H contends that questions of fact exist as to whether Burke solicited business in contravention of the non-compete clause. However, the record is void of any evidence that Burke solicited business from B&H's customers or active prospects after his employment with

B&H ended.[2]  B&H also claims that "Jason Jones and Mike Henderson both left the employment of the Defendant only a couple of weeks after the Defendant gave his notice" and went to work "for the Defendant, who is responsible for hiring for his new company." Docket entry #30, at 6.  B&H presents no evidence that Burke induced Jones or Henderson to leave their jobs with B&H, and Lamb acknowledged in deposition that he has no evidence to support such a claim.  *See* Lamb Dep. at 155-156.  The Court finds no genuine issues of material fact as to whether Burke breached the non-compete clause.

Burke's Counterclaim

Burke seeks summary judgment as to liability on his counterclaim that B&H breached the Agreement by failing to pay him compensation for the thirty-day period after he submitted his notice of resignation and failing to issue him 213 shares of B&H stock on January 1, 2010.

*Post-Notice Compensation*.  The Agreement contains the following "termination without cause" provision:

> Notwithstanding any other terms of this Agreement, the Employer or Employee may terminate this Agreement and Employee's employment hereunder, without cause, at any time by giving thirty (30) days written notice of termination to the other party. In such event, Employee shall be paid his regular compensation up to the date of termination and shall continue to render his services up to the day of termination, unless waived by Employer.

Docket entry #20, Ex. 1 at ¶ 9.  It is undisputed that on September 1, 2010, Burke gave Lamb thirty-day's written notice of his resignation and that B&H waived its right to have Burke continue working for thirty days, up to the date of his termination.  It is also undisputed that

---

[2]Citing Lamb's deposition testimony, B&H claims that Burke solicited work from Raggio, a subcontractor of Chesapeake.  However, Lamb's deposition testimony indicates that Burke contacted Chesapeake and Raggio on behalf of B&H, when he worked for B&H.  *See* docket entry #20, Ex. #2 at 39-40.

B&H did not pay Burke his regular compensation for the thirty-day, post-notice period.

Burke maintains that the termination without cause provision means that "B&H can wave the provision of services by Burke, but Burke is still entitled to his compensation." Docket entry #32, at 12. B&H, on the other hand, contends that "the plain language of the contract allows for waiver of compensation and the rendering of services in the event of notice being given." Docket entry #30, at 6.

As a general rule, the meaning of an unambiguous contract presents a question of law appropriate for summary judgment, but the interpretation of an ambiguous contract term presents a question of fact, thereby precluding summary judgment. In interpreting a contract, a court must look to the plain meaning of the words to ascertain the parties' intent. *See Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 889–90 (Tenn. 2002). "If the language is clear and unambiguous, the literal meaning controls the outcome of the dispute. If, however, the words in a contract are susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by a literal interpretation of the language." *Allstate Ins. Co. v. Watson,* 195 S.W.3d 609, 611 (Tenn. 2006)(citations omitted).

Here, the Court finds that the plain terms of the Agreement clearly provide that either Burke or B&H may terminate Burke's employment by giving thirty-days written notice and that upon such notice, Burke "shall" be paid his regular compensation up to the date of his termination. The Court further finds that while the Agreement provides that B&H may waive its right to Burke's continued services for the thirty-day period following notice of termination, it does not provide that such waiver will discharge the duty to pay Burke his regular compensation up to the date of termination. The undisputed facts show that Burke was entitled to receive his

regular compensation for the thirty-day period following his notice submitted on September 1, 2010 and that B&H breached its duty to pay.

*Stock*.   It is undisputed that the Agreement provides that Burke shall receive 213 shares of B&H stock on January 1, 2010 and that B&H failed to issue the stock as promised.  In opposition to summary judgment, B&H states that "the contract governs how stock is issued and said right to receive stock automatically terminates with the failure of the Defendant to comply with the terms of the agreement."  Docket entry #30, at 6.  As previously stated, the Court finds that B&H has failed to come forward with evidence that Burke failed to comply with the terms of the Agreement.  Accordingly, the Court finds that the undisputed facts show that B&H breached a duty to issue Burke 213 shares of stock on January 1, 2010.

For the reasons stated, the Court finds that Burke is entitled to summary judgment on the issue of whether B&H breached the Agreement.  Burke acknowledges that fact issues remain regarding damages.

### III.

For the reasons stated, Defendant's motion for partial summary judgment (docket entry #20) is GRANTED.  Plaintiff's claims against Defendant are DISMISSED WITH PREJUDICE, and  Defendant is granted summary judgment in his favor on his counterclaim to the extent that the Court finds, as a matter of law, that Plaintiff breached the parties' employment agreement.  Trial will proceed on the issue damages.

IT IS SO ORDERED THIS 12TH DAY OF DECEMBER, 2011.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE